IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NANCY HENRY,

               Plaintiff,

     v.

GERBER PRODUCTS COMPANY,

               Defendant.

No. 3:15-cv-02201-HZ

OPINION & ORDER

David F. Sugerman
David F. Sugerman Attorney, PC
707 SW Washington St., Ste. 600
Portland, OR 97205

John J. Roddy
Bailey & Glasser LLP
99 High St., Ste. 304
Boston, MA 02110

Stephen Gardner
Stanley Law Group
1680 NW Precision Ln.
Bend, OR 97703

       Attorneys for Plaintiff

1 - OPINION & ORDER

Bryan A. Merryman
White & Case LLP
555 S. Flower St., Ste. 2700
Los Angeles, CA 90071

Heidee Stoller
Thomas R. Johnson
Perkins Coie, LLP
1120 NW Couch St., 10th Floor
Portland, OR 97209

        Attorneys for Defendant

HERNÁNDEZ, District Judge:

        Plaintiff Nancy Henry sued Defendant Geber Products Company ("Gerber") because Henry believes that the labels Gerber uses for its Puffs cereal products are misleading under Oregon law. Gerber now moves to dismiss Henry's complaint. Gerber asserts that its labels comply with federal food labeling requirements, and therefore Henry's state law claim for unfair trade practices is preempted by federal law. After closely examining the statutes and regulations at issue, the Court agrees. Gerber's motion to dismiss is granted, and Henry's complaint is dismissed, with leave to amend.

BACKGROUND

        Gerber is a well-known baby food company. Compl. ¶ 8, ECF No. 1-1. One of Gerber's product lines is "Gerber Graduate Puffs," a cereal snack made with whole grains that comes in a variety of flavors including Banana, Sweet Potato, Blueberry, Peach, and Apple. Req. for Judicial Notice Exs. A–E, ECF Nos. 7-1–7-5. Henry is an Oregon resident who purchased several Gerber's Puffs products for her family. Compl. ¶ 2. Henry claims that the labels for Gerber's Puffs are illegally misleading because the packages prominently feature pictures of fruits or vegetables but the Puffs themselves do not contain any fruits or vegetables. Compl. ¶ 11.

The front label for the Banana Puffs is depicted below as a representative example:



Req. for Jud. Not. Ex. A at 1. The label reads, in relevant part:

> Gerber Graduates
>
> Puffs
> Cereal snack
> Banana
> Naturally flavored with other natural flavors
>
> Made with Whole Grains

Id. (some capitalization altered). Immediately below the text description of the product, the label

features a picture of a large bunch of three bananas, three slices of banana, and seventeen beige,

star-shaped cereal pieces. Id. A review of the package's back label reveals the following

ingredients, in descending order of predominance by weight:[1]

> INGREDIENTS: Rice Flour, Whole Wheat Flour, Wheat Starch, Cane Sugar, Whole Grain Oat Flour, Dried Apple Puree, LESS THAN 2% OF: Natural Banana Flavor, Calcium Phosphate, Mixed Tocopherols (to maintain freshness), Caramel Color, Turmeric Extract Color.

Id. at 2 (some capitalization altered). The package also lists a number of vitamins and minerals.

Id. at 2.

As reflected in the ingredient list, the Gerber Banana Puffs do not actually contain any

banana, merely "natural banana flavor." The same is true for the other Puffs products, save for

the Peach Puffs, which contains some amount of peach juice concentrate. See Req. for Jud. Not.

Exs. B–E. Henry apparently observed the large pictures of the various fruits and vegetables on

the Puffs labeling and felt misled when she discovered that the "Gerber Puffs are not the fruit-or

vegetable-packed health snacks that the labeling, promotions, and advertising make them out to

be." Compl. ¶ 11.

Henry filed suit against Gerber in Oregon state court, seeking to represent a class of

consumers who had purchased Puffs products in Oregon. Compl. ¶ 6. She brought her claims

under provisions of Oregon's Unfair Trade Practices Act ("UTPA"), alleging, among others, that

Gerber unfairly represents the Puffs products as having "particular characteristics, ingredients,

benefits, or qualities that they do not have." Compl. ¶ 16 (citing Or. Rev. Stat. § ("ORS")

646.608(1)(e)).

Gerber removed the case to this Court based on the Class Action Fairness Act, which

provides a federal district court with original jurisdiction over a class action with one hundred or

more class members, an amount in controversy of five million dollars or more, and with minimal

---

[1] See FDA regulations regarding ingredient lists at 21 C.F.R. § 101.4(a)(1) and (2).

diversity between the parties, that is, if one defendant is from a different state than one of the class members. A week later, Gerber moved to dismiss Henry's complaint for failure to state a claim. Henry responded to the motion and simultaneously moved to remand the case back to state court. Both motions are resolved below.

STANDARDS

**A.  Motion to Remand**

A defendant may remove to federal court any civil action filed in state court over which the federal court has original jurisdiction. 28 U.S.C. § 1441. "If at any time before final judgment it appears that the district lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Generally, "the removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)). However, no such "antiremoval presumption attends cases involving CAFA." Jordan v. Nationstar Mortgage LLC, 781 F.3d 1178, 1183 (9th Cir. 2015) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014)).

**B.  Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) asks the court to test the sufficiency of a party's claims. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002). The court is not, however, required to assume the truth of mere conclusory allegations. Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). A complaint that alleges grounds for relief based on nothing "more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action" will be dismissed. Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face," meaning the plaintiff's

pleaded facts must allow "the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation

marks omitted).

DISCUSSION

**1. Henry's Motion to Remand**

The Court first addresses Henry's motion to remand this case to state court. She argues

that Gerber has failed to carry its burden to show that this Court has subject matter jurisdiction

over her claims under the Class Action Fairness Act ("CAFA"). Pl. Mot. to Remand at 1, ECF

15.

Under CAFA, federal district courts have original jurisdiction over a class action if (1)

the aggregate amount in controversy exceeds five million dollars, (2) any class member is a

citizen of a state different from any defendant, (3) the primary defendants are not states, state

officials, or other government entities, and (4) there are at least one hundred plaintiffs in the

class. See 28 U.S.C. §§ 1332(d)(2), (d)(5); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1020–

1021 (9th Cir. 2007) (citations omitted); Reddick v. Glob. Contact Sols., LLC, No. 3:15-CV-

425-PK, 2015 WL 3466206, at *2 (D. Or. June 1, 2015). Although CAFA significantly changed

some aspects of the law of removal—most notably, perhaps, by removing the presumption

against removal in cases invoking CAFA—it did not alter the longstanding rule that the party

seeking a federal forum has the burden of proving the requirements of jurisdiction have been met

by a preponderance of the evidence. <u>Abrego Abrego v. The Dow Chem. Co.</u>, 443 F.3d 676, 685

(9th Cir. 2006); <u>Rodriguez v. AT & T Mobility Servs. LLC</u>, 728 F.3d 975, 978 (9th Cir. 2013).

　　　Henry brings her claim under various sections of the Oregon UTPA. Compl. ¶¶ 23–27.

The UTPA provides that an individual can bring a claim for a violation of the UTPA to "recover

actual damages or statutory damages of $200, whichever is greater." ORS 646.638(1). Henry's

complaint asserts that she "and the class are entitled to recover statutory damages of $200 per

violation." Compl. ¶ 27. Thus, the jurisdictional threshold for CAFA removal is met if Oregon

consumers purchased more than 25,000 units of Puff products during the class period ($200 x

25,000 = $5,000,000).

　　　Gerber's Notice of Removal includes a declaration from Mr. Russ Levitan, the Associate

Director of Customer Analytics for Gerber, which asserts that Gerber sold "many times in excess

of 25,000 units of both Gerber Graduates products and Puss Cereal Snack products in Oregon"

during the relevant time. Levitan Decl. ¶ 13, ECF 2. Henry's motion for remand attacked the

Levitan Declaration as speculative and improperly reliant on unverified data from a third party.

Gerber subsequently filed under seal a supplemental declaration from Mr. Levitan that explained

the nature of the third party data and that Gerber relied on this data to conduct its business. Supp.

Levitan Decl. ¶ 1, ECF 22. Mr. Levitan also confirmed that the actual number of Gerber

Graduates products and Puffs snacks sold in Oregon far exceeded the 25,000 units required to

meet CAFA's $5 million threshold. Supp. Levitan Decl. Ex. A. Therefore, Henry's motion to

remand is denied.

　　　In her reply, Henry conceded that "Gerber's proof shows that – if each sale results in the

statutory amount—the amount in controversy is well in excess of $5,000,000." Pl. Reply at 2.

She goes, however, one step further, and seems to ask the Court to conclusively interpret the

statutory damages provision in the Oregon UTPA: "If the Court agrees," Henry writes, "that each sale gives rise to the statutory amount—rather than merely $200 per consumer class member—the Plaintiff agrees that Gerber has met its burden." Id. "If, however, statutory damages are calculated on a per-consumer basis," she continues, "then Gerber has not shown that enough individual Oregon consumers bought Puffs to establish federal jurisdiction." Id.

The Court declines to interpret the damages provision of the UTPA at this time. For one, the parties did not squarely present or meaningfully analyze this issue, and the Court's preliminary research did not reveal any case law interpreting the section. The Court will not endeavor to answer this important question without the benefit of full briefing and an in-depth exploration of statutory text, structure, and, if necessary, legislative history or other interpretive tools. See State v. Gaines, 346 Or. 160, 164–65, 206 P.3d 1042, 1046 (2009) (explaining Oregon's statutory interpretation process).

Second, and more importantly, the Court's analysis of the amount in controversy for purposes of establishing jurisdiction under CAFA need not consider what the plaintiff will actually recover if she is successful. Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010) (citation omitted) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."). The ultimate inquiry at this stage is "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually owe*." Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting Rippee v. Boston Market Corp., 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)). "In other words, in assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.' " Campbell v. Vitran Exp., Inc., 471 F. App'x 646, 648

(9th Cir. 2012) (quoting Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

Henry's complaint asserts that she "and the class are entitled to recover statutory damages of $200 per violation." Compl. ¶ 27. Taken together with Gerber's evidence of the number of Puffs sold in Oregon, Gerber has shown by a preponderance of the evidence that the amount in controversy in this action exceeds CAFA's jurisdictional threshold by many orders of magnitude. See Korn, 536 F. Supp. 2d at 1206 ("Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met.") (citing Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000)).

Finally, the Court also declines to remand based on the possibility that Henry may lack standing to seek injunctive relief against Gerber. See Pl. Mot. at 6–8; Pl. Reply at 2 ("[I]f the Court agrees with Plaintiff's position on . . . the right to prospective remedial injunctive relief, then Gerber has met its burden of demonstrating the Court's jurisdiction. If not, remand is in order."). Once the statutory prerequisites are met, CAFA vests the Court with original jurisdiction over the class action. Serrano, 478 F.3d at 1020–21. The removal statute allows removal of "any civil action" over which the district court has original jurisdiction. 28 U.S.C. § 1441(a); see also Lee v. Am. Nat. Ins. Co., 260 F.3d 997, 1002 (9th Cir. 2001). In the Ninth Circuit, "the presence of at least some claims over which the district court has original jurisdiction is sufficient to allow removal of an entire case, even if others of the claims alleged are beyond the district court's power to decide." Id. at 1002–03 (citing Kruse v. State of Hawaii, 68 F.3d 331, 334–35 (9th Cir. 1995)).

To the extent the Court can construe Henry's argument as a request for partial remand of the injunctive relief portion of her case, that request is denied. Although Henry asks the Court to "remand those claims over which federal courts may not have jurisdiction," an injunction is a type of relief, not a separate cause of action. BAC Home Loans Servicing, LP v. Hackett, No. 3:11-CV-00416-HZ, 2013 WL 5636714, at *4 n.3 (D. Or. Oct. 11, 2013); Corral v. Homeeq Servicing Corp., No. 2:10-CV-00465, 2010 WL 3927660, at *7 (D. Nev. Oct. 6, 2010) ("Injunctive relief is not a claim but a remedy."); Curtis v. Option One Mortgage Corp., No. 109CV1982AWISMS, 2010 WL 1729770, at *8 (E.D. Cal. Apr. 28, 2010). The Court fails to see how it could remand a request for relief without an attendant cause of action. Davidson v. Kimberly-Clark Corp., No. C 14-1783 PJH, 2015 WL 2357088, at *4 (N.D. Cal. May 15, 2015) (denying the plaintiff's similar request to bifurcate and separately remand a request for injunctive relief in a consumer protection case: "this court . . . remains . . . flummoxed by the prospect of attempting to remand a remedy without any accompanying cause of action seeking that remedy.").

## 2. Gerber's Motion to Dismiss

Having determined that Henry's case is not subject to remand, the Court turns to Gerber's motion to dismiss. Gerber's primary argument is that the labels for its Puffs Cereal Snack products "comply with all applicable regulations of the Federal Food and Drug Administration ("FDA"), which preempt state law." Def. Mot. at 1, ECF 6. Gerber asserts a number of additional grounds for dismissing Henry's complaint, including that its labels fall under the Oregon UTPA's safe-harbor provision, that its labels are not likely to deceive a reasonable consumer as a matter of law, that Henry's purported class definition is overbroad, that she lacks standing, and that she failed to plead her claims with particularity as required by Rule 9(b).

### a. Preemption

Gerber first attacks Henry's UTPA claim under Oregon law as preempted by federal statute, specifically the Food, Drug, and Cosmetic Act ("FDCA"). Gerber asserts that FDA regulations made pursuant to the FDCA "explicitly permit Gerber to use . . . terms [like 'Sweet Potato' and 'Banana'] and visual depictions to identify a product's 'characterizing flavor.' " Def. Mot. at 6. Thus, Gerber argues, Henry's claim that the Puffs labels are misleading because they do not contain any of the pictured fruit are preempted because they seek to impose requirements that are not identical to federal law. Def. Mot. at 8.

The Supremacy Clause of the Federal Constitution gives Congress the power to preempt state law. Arizona v. United States, 132 S. Ct. 2492, 2500 (2012) (citations omitted); see also U.S. Const. art. VI, cl. 2 (stating that laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). Federal preemption occurs in three scenarios: "(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." Chae v. SLM Corp., 593 F.3d 936, 941 (9th Cir. 2010) (quoting Tocher v. City of Santa Ana, 219 F.3d 1040, 1045 (9th Cir. 2000)).

An analysis of a particular statute's preemptive effect must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996). The effect of this presumption against preemption is "to support, where plausible, a narrow interpretation of an express pre-emption provision, especially when Congress has legislated in a field traditionally occupied by the States." CTS Corp. v. Waldburger, 134 S. Ct.

2175, 2189 (2014) (internal quotation marks omitted). Where Congress acts to preempt state law, the examination of the statute's preemptive effect " 'must rest primarily on a fair understanding of *congressional purpose,*' and . . . courts [must] consider not only the language of the statute itself but also the 'statutory framework' surrounding it and the 'structure and purpose of the statute as a whole.' " Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1060 (9th Cir. 2009) (quoting Medtronic, 518 U.S. at 485–86).

The FDCA prohibits the "adulteration or misbranding of any food . . . in interstate commerce." 21 U.S.C. § 331(b). The statute provides a number of ways a food may be misbranded, such as a food "offered for sale under the name of another food," 21 U.S.C. § 343(b), or if a food's label does not "bear[] . . . the common or usual name of the food" or the "common or usual name of each . . . ingredient" that makes up the food. 21 U.S.C. § 343(i). Particularly relevant here is subsection 343(a), which deems a product misbranded if its labeling is "false or misleading in any particular." 21 U.S.C. § 343(a); see also Stansfield v. Minute Maid Co., No. 4:14CV290-MW/CAS, 2015 WL 4873685, at *2 (N.D. Fla. Aug. 13, 2015) (referring to § 343(a) as "something of a catch-all").

In 1990, Congress amended the FDCA to include additional food labeling requirements and to "create uniform national standards regarding the labeling of food." Bruton v. Gerber Products Co., 961 F. Supp. 2d 1062, 1079 (N.D. Cal. 2013). As part of that goal, Congress amended the FDCA to explicitly preempt certain categories of state labeling requirements that are not identical to federal requirements.  Section 343-1 provides that "no State . . . may directly or indirectly establish . . . any requirement . . . made in the labeling of food of the type required by," among others, 21 U.S.C. § 343(i) and § 343(k), "that is not identical to the requirements of

such section. 21 U.S.C. § 343-1(a)(2) & (3) [2]. Notably, the preemption clause in § 343-1 does not

mention the "catch-all" provision at § 343(a).

According to the FDA, " 'Not identical to'. . . means that the State requirement directly

or indirectly imposes obligations or contains provisions concerning the composition or labeling

of food . . . that: (i) [a]re not imposed by or contained in the applicable provision [or regulation];

or (ii) [d]iffer from those specifically imposed by or contained in the applicable provision [or

regulation]." 21 C.F.R. § 100.1(c); see also Stansfield, 2015 WL 4873685 at *3 (discussing in

detail the structure of the FDCA and the NLEA). Put another way, "[t]he FDCA does not

preempt Plaintiffs' claims as long as 'the requirements they seek to impose are either identical to

those imposed by the FDCA and the NLEA amendments or do not involve claims or labeling

information of the sort described' " in the relevant sections of the FDCA, including sections

343(i) and 343(k). Bronson v. Johnson & Johnson, Inc., No. C 12-04184 CRB, 2013 WL

1629191, at *4 (N.D. Cal. Apr. 16, 2013) (quoting Chacanaca v. Quaker Oats Co., 752 F. Supp.

2d 1111, 1118 (N.D. Cal. 2010)).

Moving now to the specific labeling requirements at issue here, the FDCA mandates that

labels bear "the common or usual name of each . . . ingredient . . . except that spices flavorings,

and colors . . . may be designated as spices, flavorings, and colorings without naming each." 21

U.S.C. § 343(i)(2). The FDCA further requires any foods that use artificial flavorings "bear []

labeling stating this fact." 21 U.S.C. § 343(k). FDA regulations implemented under these

subsections "expressly permit a manufacturer to indicate the 'characterizing flavor' of a food

product,' and set forth exactly how the product's 'characterizing flavor' is to be described on the

product's 'label, labeling, and advertising.' " Dvora v. Gen. Mills, Inc., No. CV 11-1074-GW

---

[2] The Supreme Court has held that the term "requirements" in an express preemption provision "reaches
beyond positive enactments, such as statutes and regulations, to embrace common-law duties." Bates v.
Dow Agrosciences LLC, 544 U.S. 431, 443 (2005).

PLAX, 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011) (quoting 21 C.F.R. § 101.22(i)). The relevant portions of the regulations are excerpted below:

(i)     If the label, labeling, or advertising of a food **makes any direct or indirect representations** with respect t**o the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means**, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the **characterizing flavor** and shall be declared in the following way:

(1)(i)  If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and **the food contains natural flavor derived from such ingredient** and an amount of characterizing ingredient insufficient to independently characterize the food, **or the food contains no such ingredient,** the **name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored"** in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

. . .

(iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

21 C.F.R. § 101.22(i) (emphasis added).

The gravamen of Henry's claims is that "Gerber's marketing and labeling of Puffs lead consumers to believe that Puffs *actually contain* the prominently depicted fruits or vegetables for which each variety is named." Pl. Resp. at 10; see also Compl. ¶ 11 ("While Gerber specifically

uses fruit and vegetable names in the Puffs products, the Puffs products contain none of the represented fruit or vegetables."). But the FDA regulations set out above plainly allow a manufacturer to use the name and image of a fruit on a product's packaging to describe the products "characterizing flavor," even if the product does not actually contain any of the depicted fruit, or indeed any fruit at all. 21 C.F.R. § 101.22(i)(1)(i), (iii); see also Larsen v. Trader Joe's Co., 917 F. Supp. 2d 1019, 1024 (N.D. Cal. 2013) (explaining that FDA regulations "permit [] a manufacturer to use the name and image of a fruit on a product's packaging to describe the characterizing flavor of the product even where the product does not contain any of that fruit, or contains no fruit at all."); Dvora, 2011 WL 1897349 at *4 (same).

The wisdom of the FDA's regulations on this topic is a different question for a different day. The law, as applied to the situation presented to this Court, is clear: "FDA regulations permit illustrations of fruit on product labels to indicate that product's 'characterizing flavor,' even where the product contains no ingredients derived from the depicted fruit." McKinniss v. Sunny Delight Beverages Co., No. CV0702034-RGKJCX, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) (citing 21 C.F.R. § 101.22(i)(1)(i–iii)).

Henry's state law claims under the UTPA are, therefore, preempted. Viggiano v. Hansen Nat. Corp., 944 F. Supp. 2d 877, 891 (C.D. Cal. 2013) ("Courts have repeatedly found that state law claims challenging 'natural flavors' labels, accompanied by images or names of fruit, are preempted, because such labeling references the characterizing flavor of the food and is permitted by § 101.22.") (collecting cases).

Henry attempts to avoid preemption by arguing that her claims arise under the FDCA's "catch-all" provision, which prohibits any labeling that is "false or misleading in any particular." 21 U.S.C. § 343(a); see also Pl. Resp. at 9. Since the express preemption provisions in § 343-1

do not explicitly mention § 343(a), Henry argues, she may still challenge the Puffs labels as

misleading even though its labels are "technically accurate" and comply with "the regulations'

disclosure requirements." Pl. Resp. at 10 (quoting United States v. 45/194 Kg. Drums of Pure

Vegetable Oil, 931 F.2d 808, 811 (9th Cir. 1992)).

Henry's analysis of the interplay between these statutory sections, while enticing in its

simplicity, does not stand up to close scrutiny. As explained above, the FDA's regulations

promulgated under the FDCA allow Gerber to use of a vignette containing, for example, a bunch

of bananas to indicate the product's characterizing flavor is "Banana," even if there are no

bananas in the product. "[W]here challenged conduct is expressly required or permitted by FDA

regulations, the claims fall within the core of the preemption provision because they would

'impose different requirements on precisely those aspects . . . that the FDA had approved.' "

Reynolds v. Wal-Mart Stores, Inc., No. 4:14CV381-MW/CAS, 2015 WL 1879615, at *12 (N.D.

Fla. Apr. 23, 2015) (quoting Altria Grp., Inc. v. Good, 555 U.S. 70, 86 (2008)); see also Carrea

v. Dreyer's Grand Ice Cream, Inc., 475 F. App'x 113, 115 (9th Cir. 2012) (finding claims that

sought to "enjoin and declare unlawful the very statement that federal law permits and defines"

would "impose a burden through state law that is not identical to" FDA requirements, and were

"therefore expressly preempted.") (citing Degelmann v. Advanced Med. Optics, Inc., 659 F.3d

835, 840–42 (9th Cir. 2011)).

Furthermore, while 21 U.S.C. § 343(a) prohibits labels from being "false or misleading,"

aspects of labels that are required or permitted by the FDCA or FDA regulations are "by

definition, are not considered 'false or misleading' under federal law." Red v. The Kroger Co.,

No. CV 10-01025 DMG MANX, 2010 WL 4262037, at *5 (C.D. Cal. Sept. 2, 2010). Thus, even

if Henry could bring a stand-alone claim under § 343(a), it would fail because FDA regulations

allow the types of "characterizing flavor" vignettes Gerber uses on its Puffs products.

Henry's reliance on <u>Zupnik</u> for the proposition that § 343(a) "preserves the right of . . .

private litigants to sue . . . for a false or misleading label even when the label does not violate

another more specific food labeling statute or regulation" is unavailing. Pl. Resp. at 12 (citing

<u>Zupnik v. Tropicana Products, Inc.</u>, No. CV 09-6130 DSF RZX, 2010 WL 6090604, at *2 (C.D.

Cal. Feb. 1, 2010). In <u>Zupnick</u>, the plaintiff challenged as misleading a juice label that read

"Tropicana Pure 100% Juice Pomegranate Blueberry Flavored Blend of 5 Juices from

Concentrate with other Natural Flavors." <u>Id.</u> at *1. The defendant argued that plaintiff's claims

were preempted by the FDCA, but the court disagreed and denied the defendant's motion to

dismiss. "[P]resumably," the court wrote, "Congress . . . chose to include § 343(a) in the

statutory scheme in order to allow the FDA to target specific false or misleading labels without

having promulgated regulations that address the specific false or misleading aspect of the

particular label." <u>Id.</u> at *2.

This Court declines to follow <u>Zupnick</u> for several reasons. First, the Court does not find

<u>Zupnick</u> persuasive because its analysis of express preemption, a complex and nuanced area of

law, is quite perfunctory and does not closely examine the language and structure of the FDCA

to determine Congress's intent. <u>See</u> <u>Gordon</u>, 575 F.3d at 1060 (" '[A]ny understanding of the

scope of a pre-emption statute must rest primarily on a fair understanding of *congressional*

*purpose*,' and calls for courts to consider not only the language of the statute itself but also the

'statutory framework' surrounding it and the 'structure and purpose of the statute as a whole.' ")

(quoting <u>Medtronic</u>, 518 U.S. at 485–86).

While the <u>Zupnick</u> court's interpretation (and Henry's argument relying on it) "may literally satisfy a purely textual analysis of the statute, the Supreme Court has warned against such literalism where it effectively defeats the statutory objective by negating other statutory provisions." <u>Gorenstein v. Ocean Spray Cranberries, Inc.</u>, No. CV 09-5925 GAF CWX, 2010 WL 10838229, at *1 (C.D. Cal. Jan. 29, 2010) (citing <u>United States v. Atlantic Research Corp.</u>, 551 U.S. 128, 137 (2007)). "Section 343(a) may state that a food is misbranded if its label is false and misleading in any way, but it is. . . part of a larger statutory scheme that must be construed, to the extent possible, to give effect to all of its provisions." <u>Id.</u> (citation omitted). This Court's interpretation limiting the reach of § 343(a), although divergent from <u>Zupnick</u>, is consistent with the "clear Congressional mandate that federal law governs the content" of Gerber's labels, and that food "manufacturers should not be subject to [fifty] different sets of labeling rules." <u>Id.</u> at *2.

Secondly, <u>Zupnick</u> is an outlier among the vast weight of authority that has concluded the FDCA preempts state law claims premised on an allegedly misleading depiction of a fruit or vegetable on a product's label representing its characterizing flavor. <u>See, e.g.</u>, <u>Viggiano</u>, 944 F. Supp. 2d at 891 ("Courts have repeatedly found that state law claims challenging "natural flavors" labels, accompanied by images or names of fruit, are preempted, because such labeling references the characterizing flavor of the food and is permitted by § 101.22.") (collecting cases); <u>Hairston v. S. Beach Beverage Co.</u>, No. CV 12-1429-JFW DTBX, 2012 WL 1893818, at *3 (C.D. Cal. May 18, 2012) ("The Court concludes that Plaintiff's claims related to Defendants' use of the names of various fruits to describe the different flavors of Lifewater are preempted."); <u>Dvora</u>, 2011 WL 1897349 at *6; <u>Red v. Kraft Foods, Inc.</u>, No. CV 10-1028-GW(AGRX), 2010 WL 11402175, at *3 (C.D. Cal. July 26, 2010); <u>Gorenstein</u>, 2010 WL 10838229 at *2; <u>McKinnis</u>

v. Kellogg USA, No. CV07-2611ABC(RCX), 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007).

Henry also attempts to save her claims against Gerber by asserting that the Puffs labels run afoul of the FDA's "characterizing ingredient" regulations. Pl. Resp. at 16–18 (citing 21 C.F.R. § 102.5(b)). But the FDCA does not contain a private cause of action, and numerous courts have rejected a plaintiff's attempt to use state unfair trade practices statutes as a vehicle to privately enforce FDCA requirements. See 21 U.S.C. § 337(a) ("all . . proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."); Loreto v. Procter & Gamble Co., 515 F. App'x 576, 579 (6th Cir. 2013) ("private litigants may not "bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA[.]"); In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig., 590 F. Supp. 2d 1282, 1287 (C.D. Cal. 2008) ("Courts have generally interpreted this provision [of the FDCA] to mean that no private right of action exists to redress alleged violations of the FDCA").

Importantly, some states, including California, have adopted statutes that expressly mirror the FDCA and provide a private cause of action for enforcing the state's version of the requirements. See, e.g., Khasin v. Hershey Co., No. 5:12-CV-01862 EJD, 2012 WL 5471153, at *4 (N.D. Cal. Nov. 9, 2012) (explaining that the FDCA did "not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements.") (quoting Riegel v. Medtronic, Inc., 552 U.S. 312, 330 (2008)). Oregon, however, has not adopted such a statutory scheme, and thus Henry's argument that the Puffs' labels do not comply with federal requirements is precluded by the FDCA. See Verzani v. Costco Wholesale Corp., No. 09 CIV 2117 CM, 2010 WL 3911499,

at *3 (S.D.N.Y. Sept. 28, 2010) aff'd, 432 F. App'x 29 (2d Cir. 2011) (rejecting plaintiff's claim that "Costco's labeling of the Shrimp Tray violates the FDCA and the Food and Drug Administration's regulations on the labeling of 'shrimp cocktails' because its "true purpose is to privately enforce alleged violations of the FDCA, rather than to bring a claim for unfair and deceptive business practices."); Rikos v. Procter & Gamble Co., 782 F. Supp. 2d 522, 538 n.26 (S.D. Ohio 2011) ("Courts have interpreted section 337(a) as prohibiting private rights of action under the FDCA and have dismissed state law claims that seek to enforce the FDCA or its regulations"); Parker v. Stryker Corp., 584 F. Supp. 2d 1298, 1301 (D. Colo. 2008) ("to the extent that these claims are merely derivative of plaintiff's state law claims, they are not saved merely by being recast as violations of the federal adulteration and misbranding statutes").

Because Henry's claims are preempted by federal law, the Court does not reach the merits of Gerber's other proffered grounds for dismissing Henry's complaint.

### 3. Leave to Amend

If the court dismisses a complaint, it must decide whether to grant leave to amend. See 28 U.S.C. § 1653. The Ninth Circuit has repeatedly held that dismissal without leave to amend is improper, even if no request to amend the pleading was made, unless it is clear that the defective pleading cannot possibly be cured by the allegation of additional facts. Snell v. Cleveland, Inc., 316 F.3d 822, 828 n.6 (9th Cir. 2002) (citing Lee v. City of Los Angeles, 250 F.3d 668, 692 (9th Cir. 2001)); Lopez v. Smith, 203 F.3d 1122, 1130–31 (9th Cir. 2000).

Henry did not request leave to amend, and neither party briefed the issue. When the Court inquired at oral argument whether a ruling that Henry's current claims were preempted would end her case, Henry asserted that she also challenges Gerber's advertising as misleading under Oregon law, and that such a claim would not be preempted. Assuming without deciding that

Henry is correct about preemption, it may be possible for her to add facts to her complaint to sufficiently state a claim. Her complaint alleges that Gerber's "marketing and labeling of Gerber Graduate Puffs" violated the UTPA and that Gerber has "engaged in widespread and uniform marketing and advertising to sell Puffs as healthful and nutritious and to charge a premium price." Compl. ¶¶ 1, 8. At oral argument, Henry's counsel admitted that he was not sure if Henry had ever seen any Gerber marketing, and her complaint fails to allege that she saw and relied on Gerber marketing when she purchased the Puffs. She may, however, be able to make such an allegation, and thus dismissal without leave to amend would be improper at this time. L & A Designs, LLC v. Xtreme ATVs, Inc., No. 03:10-CV-627-HZ, 2011 WL 6009993, at *1 (D. Or. Nov. 28, 2011) ("[L]eave to amend a complaint 'shall be freely given when justice so requires.' The court should apply the rule's 'policy of favoring amendments with extreme liberality.' ") (quoting FED. R. CIV. P. 15(a); DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1991)).

CONCLUSION

For the reasons stated, Henry's motion to remand [15] is denied, Gerber's motion to dismiss [6] is granted and Henry's complaint is dismissed with leave to amend. Henry may, should she so choose, file an amended complaint within thirty days of the date listed below.

IT IS SO ORDERED.

Dated this ___18___ day of ___April___, 2016.

MARCO A. HERNÁNDEZ
United States District Judge